## MICHAEL D. BYRNE *vs.* BOSTON WOVEN HOSE AND RUBBER COMPANY.

Suffolk.    January 11, 1906. — March 2, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, & SHELDON, JJ.

*Negligence,* Employer's liability.

If a machine, which is stopped by means of a shipper shifting the belt which transmits the power from a tight pulley to a loose one and is started again by reversing the process, after having been stopped in the proper manner by the person operating it, starts of itself and injures the operative, this fact unexplained is evidence of some defect in the machine and of negligence on the part of its proprietor in allowing this defect to exist.

A person employed as a printing press feeder engaged in printing envelopes who does not know that the machine he is operating is out of order does not assume the risk of an injury from the machine starting of itself after he has stopped it properly.

In an action by a printing press feeder against his employer for personal injuries, there was evidence that the plaintiff was engaged in printing envelopes, that some envelopes had fallen inside the machine and that he stopped it to take them out, that the machine was stopped by means of a shipper shifting the belt which transmitted the power from a tight pulley to a loose one and was started by reversing the process, that the plaintiff stopped the machine in a proper manner, and after waiting to see that it was at a full stop put his right hand inside to remove the fallen envelopes when the machine suddenly started of itself and his hand was caught and crushed. Experts testified that it would be impossible for the machine to start after coming to a full stop unless there was a defect in the belt or in the machine itself, and the plaintiff testified that on the last working day before the accident the belt broke and a foreman, whom the jury were warranted in finding to have been a superintendent within the meaning of the employers' liability act, mended it by lacing it, and that after the accident while the plaintiff's hand was in the press he noticed that the belt was crawling from the loose pulley to the tight pulley and attributed this to the belt being laced improperly. *Held,* that there was evidence of negligence on the part of the defendant.

LATHROP, J.    This is an action of tort in two counts under the R. L. c. 106, § 71, clauses 1 and 2.    At the trial in the Superior Court, the jury returned a verdict for the plaintiff; and the case is before us on the defendant's exceptions.

The injury occurred on March 16, 1904.    The plaintiff at this time was seventeen years old.    He had worked as a printing press feeder for two years before entering the defendant's employ, and had worked for the defendant in the

same capacity for three or four weeks before the day of the accident. On that day, after working on another press, he was set to work on the press which caused the injury. This press was two years old, and was adapted to printing small sheets. The plaintiff's duty was to place the papers in the press in such a way that the impression would be made, then to remove them and place them in piles, and subsequently to pack them in boxes.

The impression was made on the paper by forcing the type down upon it by the application of a heavy weight. Beneath the case, and about two feet from the floor, was a counterweight which swung in a half circle. Power was transmitted to the press, for the purpose of operating it, by means of a belt running from a countershaft on the ceiling to a tight pulley on the right side of the machine. The machine was started and stopped by shifting the belt from a loose pulley to the tight pulley, and *vice versa,* and this was done by means of a shipper. It was also equipped with a brake which was intended to be automatically pressed against the fly wheel by the shifting of the belt, in order to stop the wheel with greater speed, the shipper and brake being made in one piece. It was impossible to stop the machine in any other way than by shifting the belt from the tight to the loose pulley.

This press had been broken some two or three weeks before the accident, and had been repaired by the foreman. At the time of the accident the machine was being used to print envelopes. After the plaintiff had been working for a few minutes and had printed fifty or sixty pieces, he noticed that the envelopes, as they came out from the press, were striking against the top of the feed board, which was too high, and were glancing off and falling down inside the machine, and that about fifteen had already fallen. An accumulation of fallen matter inside the press had a tendency to impede its proper working, if not removed. Accordingly the plaintiff stopped the machine. He threw off the shipper with his left hand, thereby removing the belt to the loose pulley, and, after that had been done, he placed his left hand upon the fly wheel and stopped that, as the brake did not bring it to an immediate stop of itself. After thirty or forty seconds

the machine came to a full stop, and after waiting a half minute more to ascertain that the stop was complete, the plaintiff put his right hand inside to remove the fallen matter. As he was doing this, the machine suddenly and without warning started, the counterweight swung up, and the plaintiff's hand was caught and crushed between this counterweight and the body of the press.

While the defendant took many exceptions at the trial, it has confined its argument to two exceptions. The first exception is that the judge instructed the jury that if the press started of its own accord, after it had been properly stopped, this fact unexplained was some evidence of negligence on the part of the defendant. The judge immediately afterwards added: "If you find that the shipper was pushed back to this extreme limit in its proper way, then the fact that it started up is in itself some evidence of a defect somewhere, that is to say, of the existence of a defect about the machine, and some evidence of negligence on the part of the defendant, of its superintendent, in allowing that defect to exist."

Taking the portions of the charge above cited together, it is obvious that the judge went no further than this court had already gone in *Packer* v. *Thomson-Houston Electric Co.* 175 Mass. 496, 499, and *Gregory* v. *American Thread Co.* 187 Mass. 239, 241, which explains the cases of *Ross* v. *Pearson Cordage Co.* 164 Mass. 257, and *Kenneson* v. *West End Street Railway*, 168 Mass. 1, 2, relied upon by the defendant.

The remaining exception is to the refusal of the judge to order a verdict for the defendant. It is contended by the defendant that the plaintiff was not in the exercise of due care, or that he assumed the risk; and that there was no evidence of negligence on the part of the defendant.

We find nothing in the evidence for the plaintiff to enable us to say as matter of law that the plaintiff was not in the exercise of due care. The defendant put in evidence to show that the plaintiff was warned not to do as he did; but the jury was not obliged to believe this evidence. See *O'Neil* v. *Ginn*, 188 Mass. 346.

Nor can it be said as matter of law that the plaintiff assumed the risk. The danger was not an obvious one, and

the plaintiff, when he was told to go to work on a particular press, had a right to rely upon his employer to furnish him with a safe and proper press. It was no part of the plaintiff's duty to repair the machine, and he did not know that it was out of order. *Murphy* v. *Marston Coal Co.* 183 Mass. 385.

We are also of opinion that there was evidence to submit to the jury of negligence on the part of the defendant or its superintendent. While the plaintiff was bound to introduce evidence from which the jury might properly infer that the accident was caused by the defendant's negligence, he was not required to point out the particular act or omission which caused the accident. *Mooney* v. *Connecticut River Lumber Co.* 154 Mass. 407. *Kleibaz* v. *Middleton Paper Co.* 180 Mass. 363, 366.

There was evidence from the experts on both sides that it would be impossible for the machine to start after coming to a full stop unless there was some defect either in the belt or in the machine itself. As the machine did so start, if the jury believed the testimony, this was evidence of negligence on the part of the defendant. *Packer* v. *Thomson-Houston Electric Co.* 175 Mass. 496, 499.

The plaintiff went further, and testified, the accident having taken place on a Monday morning, that the belt broke on the Saturday before the accident, and that the foreman, one Bushor, mended it by lacing it. The bill of exceptions states that " there was evidence which warranted the jury in finding that Bushor was a superintendent within the meaning of the employers' liability act." The plaintiff further testified that, after the accident, and while his hand was in the press, he noticed that the belt was crawling from the loose pulley to the tight pulley, and attributed this to the fact that the belt was improperly laced. There was evidence put in by the defendant to show that the belt did not break at the time stated, but broke two months before, and was not mended by Bushor. However improbable the plaintiff's story on this point may seem to us, we cannot say, as matter of law, that the jury did not have a right to believe him.

*Exceptions overruled.*

*J. E. Cotter & C. Reno*, for the defendant.
*R. Clapp*, for the plaintiff.