JAMES L. GURNEY *vs.* JOHN B. LE BARON.

Plymouth.   November 19, 1902. — January 5, 1903.

Present: KNOWLTON, C. J., MORTON, LATHROP, & BARKER, JJ.

*Negligence*, Employer's liability, Contributory.

If the owner of an unfinished ice house causes tie beams and uprights, which are
to form part of it, to be used as the support of a temporary flooring for workmen
to stand upon in putting up the rafters for the roof, and if he personally with
the assistance of a workman places the uprights under the beams, and one of
the uprights is spliced so as to be a dangerous appliance, he may be found to
be liable for an injury to one of his workmen ignorant of the splice, caused by
the splice breaking and the platform in consequence giving way.

Whether a workman assisting in laying the temporary flooring of a staging, on
which he is about to work, is negligent in failing to satisfy himself of the suffi-
ciency of the uprights supporting the structure, which were placed by his em-
ployer personally, his employer being present and in general charge when the
temporary flooring is laid, or whether he is justified in relying upon his employer
as to what the latter has done in person, is a question of fact for the jury.   So
is the question whether the injured workman assumed the risk of such an
injury.

TORT for injuries while in the employ of the defendant from
the giving way of a staging on which the plaintiff was standing
while putting up rafters for the roof of an unfinished ice house
of the defendant.   Writ dated December 17, 1900.

At the trial in the Superior Court before *Mason*, C. J., the
jury returned a verdict for the plaintiff; and by agreement of
parties the judge reported the case for determination by this
court.   If on all the evidence the case should have been sub-
mitted to the jury, judgment was to be entered on the verdict;
otherwise, judgment was to be entered for the defendant.

*L. E. Chamberlain, E. H. Fletcher & J. C. Sullivan*, for the
defendant.

*W. C. Parker & E. D. Stetson*, for the plaintiff.

BARKER, J.   After a verdict for the plaintiff, rendered at a
trial in which the case went to a jury with full instructions to
which no exception was taken by either party, the question is
brought here by a report made by the presiding judge whether,
upon all the evidence, the case should have been submitted to

the jury, the defendant contending that a verdict should have been ordered in his favor.

The defendant owned an unfinished ice house and the work in hand was the putting on of the rafters. The side walls were twenty-six feet high, and connected by tie beams at the top. The walls had been put up in January, and it was August when the rafters were to be put on. Shortly before the day of the accident the defendant himself, with one workman not the plaintiff, had placed uprights under several of the tie beams. The office of the uprights was to raise the tie beams to a level so as to take out the sag of the side walls, and also to enable the tie beams to serve to hold a temporary floor on which workmen could stand while nailing together and putting up rafters for the roof. One at least of the uprights was spliced in such a way as to be a dangerous appliance for the purposes for which it was put in position. The temporary flooring was made of planks which were afterwards to be nailed to the rafters as part of the roof after the rafters should be raised. The evidence tended to show that while the first set of rafters was being raised the splice broke and the tie beam above broke and fell with the planking on which the plaintiff was at work.

The defendant himself was present and in general charge on the morning of the accident. There was no dispute that the plaintiff assisted in the selection of the planks and in the placing of them upon the tie beams to form the temporary flooring, nor that there was in and about the building material with which the supports of the flooring could have been made secure. The plaintiff testified that the question whether the upright props were strong enough came up in his mind, and that he did not take pains to satisfy himself whether they were strong enough or not. But he also testified that the nearest that he went to them before laying the planks was seventy-five feet; that they were rushing along the staging to get the rafters on; that he was under orders; that he did not think he was called on to exercise his own judgment, and that he trusted to the defendant and to the defendant's ability. Both the fact that the upright which gave way was spliced and the manner in which the splice was made were open and visible, but it did not appear that the plaintiff had actual knowledge of the splice.

It might have been found from the evidence that the plaintiff himself was a carpenter, and that he was accustomed to act as the defendant's foreman in the absence of the latter; but upon these points, as well as upon the question whether when the plaintiff was laying the planks the defendant did not suggest to him that he was overloading the beams, the evidence was contradictory.

We are of opinion that it was right to leave the case to the jury. The structure which fell was not a mere staging the office of which was to serve as a temporary support for workmen and materials. The tie beams were permanent parts of the building and the uprights were not put under them simply to enable them to hold up the temporary flooring to be used in putting on the roof. While the plaintiff had helped put in the tie beams, he was not present when the uprights were placed. They were put up by the defendant himself and by a workman who acted under the defendant's eye and in obedience to his directions given at the time and place when the work was done. If the defendant chose to cause the tie beams and uprights to be used as the support of a temporary flooring for workmen who should put on the roof, he would be under a like liability to a workman injured by the negligent and faulty construction of one of the uprights as if he had furnished a completed staging. In other words, he was bound to use due care to furnish suitable materials to hold up the temporary floor, and if the tie beams as supported by the uprights were not suitable for that purpose, owing to the defendant's negligence as to the spliced upright, he might be liable.

If the case were that having himself placed the uprights he had told the plaintiff to prepare a temporary flooring to be used in putting on the roof, or had told him to put up the rafters, leaving the plaintiff and his fellow workmen to find such means of support as they chose, we think that the risk of using the structure as he found it would have been upon the plaintiff. But it is conceded that the defendant was himself present and attending to and helping in the work, and it was a question of fact and so a question for the jury, whether the defendant's relation to the temporary flooring was not such as to make him liable.

This as well as the question whether the plaintiff was in the exercise of due care and whether he ought to have been found to have assumed the risk, depended upon inferences to be drawn from conflicting evidence. There is no phase of the uncontradicted evidence which shows that the plaintiff had any actual knowledge of the spliced upright, or any actual warning of the danger, or that he ought to have known that the upright was insecurely spliced, or which shows that it was negligence in him, while relying upon his employer as to what the latter had done in person, to omit to satisfy himself of the sufficiency of the uprights, his employer being present and in general charge when the temporary flooring was laid, or which shows that the general responsibility of having a safe staging on which to work was upon the plaintiff.

*Judgment on the verdict.*